## The People of the State of Illinois ex rel. Edward A. Schutt, Plaintiff in Error, v. Ludwig Siems and Meta Siems, Defendants in Error.

### Gen. No. 21,677.   (Not to be reported in full.)

Error to the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1915. Reversed and remanded with directions. Opinion filed March 15, 1916. Rehearing denied and opinion slightly modified March 23, 1916. *Certiorari* denied by Supreme Court (making opinion final).

### Statement of the Case.

Habeas corpus on the relation of Edward A. Schutt, plaintiff, against Ludwig Siems and Meta Siems, respondents, for the custody of plaintiff's child. From an order quashing the writ and dismissing the petition, the relator brings error.

The infant child involved in this controversy was the daughter and only child of the relator, and the granddaughter of the respondents. The relator was a man about thirty-two years of age, residing in the Village of Laporte, Minnesota, in which State he resided practically all of his life. On February 25, 1911, he was married to the daughter of the respondents at Kenosha, Wisconsin. Respondents' daughter and the relator were cousins of the first degree, and prior to said marriage she lived with her parents in Chicago. She visited the relator and other relatives in Minnesota and there became engaged to marry the relator. Afterwards the relator came to Chicago to be married, but found that the law of this State prohibited marriages between cousins of the first degree. Thereupon he, together with the respondents and said daughter, proceeded to Wisconsin where the marriage ceremony was performed. They all immediately returned to Chicago, and within a day thereafter the re-

lator and his wife went to their home in Minnesota, where they continued to live together as husband and wife until April 10, 1914, when she died. Vivian Dorothy Schutt, the child in question, was the only child born to relator and his wife and was about two years old when her mother died. She was not very strong physically, and about three weeks after her mother's death was taken to the home of the respondents in Chicago, where she lived at the time of these proceedings.

About December 11, 1914, relator was notified by publication that respondents had filed a petition in the County Court of Cook county for the adoption of said child. December 24, 1914, relator visited the respondents and the child, and on the 28th of the month demanded that the respondents deliver to him his child, which they refused to do. Thereupon the petition in this case was filed.

The respondents contended that the custody of the child was turned over to them by agreement ''so that they could raise her to maidenhood, the father, however, to have the right to visit said child at reasonable times;'' that this was done at the dying request of the child's mother; that she was well taken care of and had a good home in Chicago, and that it is to the best interests of said child that she stay with respondents.

There was evidence to show that respondents were able to furnish the child with a more comfortable home than relator. The evidence tended to show that relator was very fond of his child and that he did not intend in any way to surrender any of his rights by turning her over to respondents; that he was a strong healthy man, was a carpenter and contractor, and engaged in the lumber business; that he had held positions of public trust such as assessor, member of the village council, etc.; that he was honest and industrious, and had no bad habits; that he had had some financial reverses

occasioned by the destruction by fire of relator's lumber yard and was indebted in several small sums; that he was earning about one hundred dollars per month; and that he had arranged with a family living in Minnesota to take care of himself and child. Respondents further contended and the court found that the relator and his wife were married in Wisconsin to evade the laws of Illinois; that the marriage was incestuous and void *ab initio;* that the respondents were proper persons to have the custody of the infant child, and that it was for the child's best interest to be remanded to their custody.

WILLIAM C. HARTRAY and C. HELMER JOHNSON, for plaintiff in error.

GORMAN, POLLOCK & LIVINGSTON, for defendants in error.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

### Abstract of the Decision.

1. PARENT AND CHILD, § 3*—*when parent entitled to custody of child.* The parent has the right to the custody of his child as against the world unless he has forfeited his right, or the welfare of the child demands that he be deprived of it.

2. PARENT AND CHILD, § 2*—*what is controlling element as to custody of child.* The controlling element with reference to the custody of a child is the welfare of the child, and this is not to be determined solely from the financial standing of the parties.

3. MARRIAGE, § 2*—*what law determines validity of marriage in foreign State.* The legality of a marriage taking place in a foreign State, when questioned in Illinois, is to be adjudged by the laws of the foreign State, except where the marriage is in violation of some positive law of this State.

4. MARRIAGE, § 2*—*where marriage contracted in foreign State recognized.* Relator in habeas corpus proceedings for the custody of his daughter who had married his first cousin, the mother of such daughter, in Wisconsin, and returned with her thereafter to

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

his home in Minnesota, contracted a valid and binding marriage even though the laws of Illinois, which had been the home of his wife and whence he had taken her to Wisconsin, prohibit such a marriage.

5. INFANTS, § 4*—when evidence sufficient to sustain award of custody of child to father in habeas corpus proceedings. In a habeas corpus proceeding by a father residing in another State to procure the custody of his child which was left with the maternal grandparents in this State after the death of the mother, evidence held sufficient to sustain an award of the custody of the child to the father.